IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19CR379 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | <u>GOVERNMENT'S TRIAL BRIEF</u> |
| | ) | |
| MARVIN MOORE, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Justin E. Herdman, United States Attorney, Robert J. Kolansky, Assistant United States Attorney, hereby submits the following Trial Brief.

## Anticipated Legal Issues

**A.    Statement of Facts**

At trial, the Government intends to introduce evidence that on April 4, 2019, Detective Yasenchack, of the Cleveland Police Department, observed a white GMC Yukon with a Florida plate of CTJY70 make several traffic violations in the area of East 152nd Street and St. Clair Avenue in Cleveland, Ohio. Ultimately, Detective Yasenchack conducted a traffic stop of the white GMC at East 152nd Street and Woodworth Street in Cleveland Ohio.  Detective Yasenchack observed the driver of the vehicle moving around and it appeared to Detective

Yasenchack that the driver was reaching down, and then toward the back.  Detective Yasenchack made contact with the driver and identified him as Jason Moore.  While Detective Yasenchack was advising Jason Moore the reason for the traffic stop, Detective Yasenchack could smell the odor of marijuana coming from the vehicle. Detective Yasenchack went back to his zone car to prepare motor vehicle citations and to wait for back up to arrive.

Detective Sean Smith arrived to assist Detective Yasenchack. Detective Yasenchack had Jason Moore step out of the vehicle and detained him in connection with the odor of marijuana and his movements inside the vehicle.  Jason Moore admitted to Detective Yasenchack that he was smoking marijuana earlier. Detective Yasenchack placed Jason Moore in the rear of his zone car and had the passenger, Defendant Marvin Moore, step out as well.  Marvin Moore was patted down and placed in the rear of Detective Smith's zone car.

At this time, Detective Yasenchack went back to the GMC to investigate the odor of marijuana, and located a gray and black bag in the back seat area of the vehicle, where the driver, Jason Moore, was seen reaching. Inside the gray and black bag was a suspected kilogram of cocaine. This bag was located under the passenger seat of the GMC Yukon.
Upon discovery of the narcotics, Detective Yasenchack advised both males of their Miranda rights and both stated they understood.  Jason Moore stated a male by the name of Harvey left the kilo in his rental vehicle.  Specifically, Jason Moore stated, "Harvey left that s--t in that car, m----------r."

During additional search of the vehicle, Detective Yasenchack and Detective Smith located marijuana crumbs scattered about the vehicle, including on the floor in front of both the passenger seat and the driver seat, and in the cup holder and center console areas.  Additionally,

2

Detective Yasenchack noticed that the vehicle had a radio with a screen that raised up to reveal a hidden compartment.  Detective Yasenchack located a loaded handgun in this compartment, along with paperwork belonging to Jason Moore.  The handgun is described as a black and silver Taurus PT738, .380 caliber pistol, bearing serial number 61608C, along with six rounds of ammunition.

After the discovery of the kilogram of suspected cocaine and the firearm, Marvin Moore was removed from Detective Smith's zone car and searched again, incident to his arrest. Detective Yasenchack asked Marvin Moore how he knows the driver, to which he replied "I've known him all my life."  One of the detectives then asked, "Best friend, or one of your best friends?"  Marvin Moore responded, stating, "Best friend."  Both males were taken to Cuyahoga County Jail where they were booked and housed.

Later, on April 4, 2019, Marvin Moore made a number of phone calls from the Cuyahoga County Jail.  During some of these calls, defendant discusses the circumstances of the traffic stop and his arrest.  There are multiple phone calls between Marvin Moore and an unidentified male using telephone number 216-370-2423.  During these calls, Marvin Moore talks about the reasons for the traffic stop, and explains that prior to the stop, he and Jason Moore felt something weird.  Marvin Moore explains that he recalls seeing someone pull up next to the car he and Jason Moore were in, stating "he looked weird, he had a piece in his ear."

In a later call on April 4, 2019, with the same unidentified male using 216-370-2423, Marvin explained further, "Yeah, we felt something off the rip.  When we left McDonald's we saw a car, a red car with a white dude.  Two minutes later we blurted by a black undercover car." In response, the unidentified male asked, "Do y'all remember seeing that car out there, at the

3

people house?" Marvin Moore responded, "No – I didn't even, I didn't even look. I was so secure, know what I'm sayin'? I was real secure…in my head. Damn."

Later in the same telephone call, Marvin Moore and the unidentified male discuss their confusion with the nature of the arrest, stating that usually it goes the other way around. Throughout this call, and others, Marvin Moore discusses "Dude" and his belief that he and Jason Moore were set up. The government submits that when Marvin Moore discusses how it usually goes the other way around, he is referring to the common investigative technique of a controlled purchase of drugs, wherein the person supplying the drugs is the target of the investigation. However, the government submits that Marvin Moore is confused that he and Jason Moore, the purchasers of the drugs, were the ones arrested. This is a less common technique, known as a reversal.[1]

Marvin Moore also discusses Harvey on the jail calls. In an effort to disguise the identity of the person being referred to, Marvin Moore and the unidentified male talk often about "Dude." The unidentified male tells Marvin Moore that "Dude" spoke with Marvin's mother, and they discuss how "Dude" got her telephone number. Later, the unidentified male explains that he spoke with "Dude," noting that he (unidentified male) "flipped on him" ("Dude"). Marvin Moore responded, stating that he (Marvin) never accused "Dude," and stated, "I know he wouldn't do this to me."

Finally, the two men discuss that Jason Moore and Marvin Moore should have fled from

---

1. The government notes that neither a controlled purchase nor a reversal were investigative techniques utilized in the instant investigation. The traffic stop was conducted by Detective Yasenchack as a result of the motor vehicle violations noted above.

police at the scene of the traffic stop. Marvin Moore makes multiple references to being pulled over by a black, unmarked police car. He explains that a second unmarked car pulled up shortly thereafter. The unidentified male tells Marvin Moore "when that second car pulled up, you supposed to hit the gas." Marvin Moore replies, stating "I said that."

The suspected kilogram of cocaine recovered from the vehicle was sent for testing. On April 8, 2019, the Cuyahoga County Regional Forensic Science Laboratory authored a report, laboratory case number 2019-002758-0001, listing 1,000.7 grams of cocaine hydrochloride.

**B.**     **Defendant's statements, and his coconspirators' statements are substantively admissible under Rule 801(d)(2) only when offered by the Government**

1."The Government can seek to admit Defendant's out-of-court statements, but Defendant cannot."

The Government intends to admit some of Defendant's out-of-court statements for the truth of the matters asserted. Those statements include Defendant's statements in the following contexts:

- Body camera recordings of the traffic stop and the defendant's arrest; and
- Audio-recording of jail calls

Out-of-court statements made by a party-opponent are excluded from the definition of hearsay under Rule 801(d)(2), but this exception does not apply when the same statements are offered by the party himself. The party-opponent exception reflects the fact that the adversarial process allows the party-declarant to rebut his or her own admissions by testifying at trial. See *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005). This exception does not, however, extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses. *See United States v. Payne*, 437 F.3d 540, 547-48 (6th Cir. 2006).

5

For example, a defendant may try to introduce his own out-of-court exculpatory statements, either in the form of witness testimony or recorded conversations.  This evidence would clearly be hearsay and inadmissible under Rule 802.  In *United States v. Hunt*, the Sixth Circuit considered the admissibility of out-of-court statements of a co-defendant, which were memorialized in an affidavit signed by the defendant.  521 F.3d 636 (6th Cir. 2008).  Hunt sought to introduce the affidavit as evidence because statements contained therein exculpated Hunt.  *Id*. at 642-43.  Hunt sought admission of the affidavit under Rules 804(b)(1) (former testimony) and Rule 807 (residual hearsay exception).  The Sixth Circuit affirmed the district court's exclusion of the affidavit as inadmissible hearsay.  *Id*. at 643.

A party cannot establish a defense by introducing his own statement through a third-party witness.  If a defendant wants his or her version of the events before the court, that defendant must take the witness stand, under oath, and be subject to cross-examination.  *United States v. Nakai*, 413 F.3d 1019, 1022 (9th Cir. 2005) (rejecting the defendant's attempt to introduce his own exculpatory statement).

Finally, precluding a defendant from eliciting inadmissible hearsay statements does not violate the Confrontation Clause.  *See United States v. Ford*, 761 F.3d 641 (6th Cir. 2014).

Therefore, the Government respectfully requests that the Court prohibit defendant from introducing any of his out-of-court statements at trial through any witness other than himself.

2. <u>Defendant was engaged in a trafficking conspiracy, and so his coconspirators' statements are similarly admissible for their truth, but only when the Government offers them.</u>

The Government intends to offer the statements made by coconspirators.  In particular, the Government will offer the body camera footage from the traffic stop and arrest of the

6

defendant and coconspirator Jason Moore.  As with Defendant's own statements, his coconspirators' out-of-court statements are, when offered by the Government, not hearsay.  *See* Fed. R. Evid. 801(d)(2)(E).  This rule also applies to conversations between a coconspirator and a third party.  *See United States v. Westmoreland*, 312 F.3d 302, 309-10 (7th Cir. 2002).

A statement falls within the Rule 801(d)(2)(E) coconspirator exclusion if the Government shows "(1) that a conspiracy existed, (2) that [Defendant] was a member of the conspiracy and, (3) that the hearsay statement was made in the course and in furtherance of the conspiracy"— together, the *Enright* showing.  *See United States v. Wright*, 343 F.3d 849, 866 (6th Cir. 2003) (citation omitted); *United States v. Benson*, 591 F.3d 491, 502 (6th Cir. 2010) (same); *see generally United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978).[2]

The Court determines whether the Government has proved these facts by a preponderance of the evidence under Federal Rule of Evidence 104(a).  *See United States v. Tocco*, 200 F.3d 401, 420 (6th Cir. 2000).  Accordingly, the Court "may consider hearsay" and other non-privileged evidence that would otherwise be inadmissible.  *Bourjaily v. United States*, 483 U.S. 171, 178 (1987).  The Court may even consider the "statements sought to be admitted" under Rule 801(d)(2)(E), *id.* at 181, though the Government must provide "sufficient independent and corroborating evidence" of the conspiracy, *United States v. Smith*, 320 F.3d 647, 654 (6th Cir. 2003).

---

2. Rule 801(d)(2)(E) coconspirator statements are "categorically non-testimonial and also within a 'firmly rooted' exception to the hearsay rule.  Therefore, the Confrontation Clause does not bar their admission." *United States v. Tragas,* 727 F.3d 610, 615 (6th Cir. 2013) (internal citations omitted).

Courts in this Circuit commonly "admit the hearsay statements subject to a later ruling that the government has met its burden." *See id.* (citing *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir.1979) and *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir.1999)). This is a rule the Sixth Circuit has consistently followed for decades. *See, e.g.*, *United States v. Lamar*, 466 F. App'x 495, 498 (6th Cir. 2012); *United States v. Lora*, 210 F.3d 373 (6th Cir. 2000); *United States v. Castro*, 908 F.2d 85, 91 (6th Cir. 1990).

Here, the conspiracy's existence and Defendant's membership is well documented by the statements themselves and by ample corroborating evidence. Defendant and coconspirator Jason Moore are stopped in a vehicle with a kilogram of cocaine. Coconspirator Jason Moore volunteers to Detective Yasenchack that a man named Harvey left the kilogram in the vehicle. Shortly after arrest, Marvin Moore discussed Harvey and "Dude" with an unidentified male over jail calls. Further, Defendant makes it clear that he and coconspirator Jason Moore felt something weird shortly before they were stopped, and that Defendant believed that they should have fled from police once a second unmarked police car pulled on scene.

The evidence will also show that the statements were "made in the course and in furtherance of the conspiracy." *See Wright*, 343 F.3d at 866. The conspiracy was ongoing at the time of the traffic stop, and Jason Moore's statements regarding Harvey were an effort to shift blame from himself and Defendant Marvin Moore. Such statements "can take many forms," including efforts to conceal a scheme or statements "not 'exclusively, or even primarily, made to further the conspiracy.'" *Tocco*, 200 F.3d at 419 (citation omitted). Coconspirator Jason Moore's statements regarding Harvey, at the time of his and Defendant Marvin Moore's arrest, were at least partly in furtherance of the conspiracy.

8

Accordingly, the Government submits that the proffered coconspirator statements are admissible under Rule 801(d)(2)(E).

### Witnesses the government currently intends to call

- Cleveland Police Department Detective Jeffrey Yasenchak will testify about the traffic stop and arrest of the defendant and coconspirator Marvin Moore.  He will also testify regarding the jail calls made by Marvin Moore.

- Cleveland Police Department Detective Sean Smith will testify about the traffic stop and arrest of the defendant and coconspirator Marvin Moore.

- Cleveland Police Department Detective/Alcohol, Tobacco, Firearms and Explosives Task Force Officer Donald Kopchak will testify regarding jail calls made by Marvin Moore and regarding the federal arrest of Marvin Moore and Jason Moore.

- Brian Marosan, B.S., Forensic Science, Forensic Scientist II, Cuyahoga County Regional Forensic Science Laboratory:  Mr. Marosan will testify regarding the chemical analysis of controlled substances in this case.  He will testify regarding the procedures used to conduct the testing in the laboratory and the results of that testing.
    - The United States has disclosed to Defense counsel in discovery the qualifications and findings of Mr. Marosan.  The United States anticipates that he will testify within his area of expertise on the subject matters listed above.  *See* Fed. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue").

9

### Government Representative and Separation of Witnesses

The United States respectfully requests that this Court issue a separation-of-witness order pursuant to Federal Rule of Evidence 615 and designate ATF Task Force Officer Donald Kopchak as its representative in this case to be present at counsel table throughout the trial. His presence in the courtroom during trial is essential to the presentation of the United States' case. *See* FED. R. EVID. 615(b) (specifically excluding from a sequestration order "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney"); FED. R. EVID. 615(c) (providing an additional exception for essential witnesses).

### Estimate of Trial Length

The United States anticipates that its case in chief should take no longer than two days.

### Voir Dire

The United States will file its proposed voir dire questions.

### Stipulations

The United States anticipates a stipulation regarding the chain of custody, authenticity, and admissibility of the drug evidence in this case and the lab report findings of 1,000.7 grams of cocaine, a Schedule II controlled substance.

Further, the United States anticipates a stipulation regarding the authenticity and admissibility of the body-worn camera footage from the traffic stop on April 4, 2019.

## **Jury Instructions**

The United States and the defense will file joint jury instructions.

                                              Respectfully submitted,

                                              JUSTIN E. HERDMAN
                                              UNITED STATES ATTORNEY

By:    /s/ Robert J. Kolansky
           Robert J. Kolansky (PA: 316899)
           Vasile C. Katsaros (OH: 0067386)
           Assistant U.S. Attorneys
           United States Court House
           801 West Superior Avenue, Suite 400
           Cleveland, OH 44113
           (216) 622-3780
           (216) 522-7499 (facsimile)
           Robert.Kolansky@usdoj.gov
           Vasile.katsaros@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2020, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by email.

<u>/s/ Robert J. Kolansky</u><br>
Robert J. Kolansky<br>
Assistant U.S. Attorney